JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
DORIS A. KAELIN (162069)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: dkaelin@murraylaw.com

Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re: | Jointly Administered Chapter 11 Cases |
| **AVIZA TECHNOLOGY, INC.**, A Delaware corporation Employer's Tax ID No.: 20-1979646 | Case No. 09-54511-RLE-11 |
| **AVIZA, INC.**, A Delaware corporation Employer's Tax ID No.: 20-0249205 | Case No. 09-54514-RLE-11 |
| **TRIKON TECHNOLOGIES, INC.**, A Delaware corporation Employer's Tax ID No.: 95-4054321 | Case No. 09-54515-ASW-11 |
| Debtor(s). 440 Kings Village Road Scotts Valley, CA 95066 | Date: TBD Time: TBD Place: United States Bankruptcy Court 280 S. First St., Room 3099 San Jose, CA 95113 Judge: Honorable Roger L. Efremsky |

**MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS; AND (II) FOR THE DEBTOR AND BANKS AND OTHER FINANCIAL INSTITUTIONS TO COMPLY WITH PROCEDURES RELATING THERETO**

TO: THE HONORABLE ROGER L. EFREMSKY, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; SECURED CREDITORS; THE TWENTY (20) LARGEST

Case: 09-54511  Doc# 17  Filed: 06/12/09  Entered: 06/12/09 13:43:19  Page 1 of 10

1 MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;….

CREDITORS; AND OTHER PARTIES IN INTEREST.

Aviza, Technologies, Inc. ("ATI"), Aviza, Inc. ("Aviza") and Trikon Technologies, Inc. ("Trikon"), (collectively, the "Debtor" or the "Company") hereby move for an order authorizing, but not requiring, the Debtor to (i) honor prepetition employee business expenses, obligations and contributions to employee benefit plans; and (ii) to the extent that certain banks and other financial institutions are required to receive, process, honor, and pay checks presented for payment by its employees, to comply with procedures and honor all funds transfer requests made by the Debtor relating thereto ("Employee Benefits Motion").

This Employee Benefits Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS ("Omnibus Notice"), the OMNIBUS DECLARATION OF PATRICK C. O'CONNOR IN SUPPORT OF FIRST DAY MOTIONS ("Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion. By a separate application, Debtor has requested an order shortening time for notice and setting a hearing on this matter and the other "first day" motions on an expedited basis.

## I. JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein are 11 U.S.C. §§ 101(a), 363, 507(a)(4) & (5), 1107(a) and 1108. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. MOTION

**A. Bankruptcy Filing**

1. On June 9, 2009, (the "Petition Date"), the Debtor filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. The Debtor is presently operating its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108. On June 10, 2009, the Court entered its ORDER AUTHORIZING AND DIRECTING JOINT ADMINISTRATION OF ESTATES pursuant to which the Court ordered these estates to be jointly administered.

2. No official committee of unsecured creditors ("Committee") has been formed in the

RPR
R:\Aviza\Pet\Mot\1stDay\Wages Mot v 2.doc
Case: 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 2 of 10

2    MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;....

bankruptcy case to date.

**B.    History And Relevant Facts**

3.    A detailed discussion of the Debtors' history, description of its business, its assets and liabilities and the events that led to its need for bankruptcy relief are set forth in the Debtors' MOTION FOR INTERIM AND FINAL ORDERS APPROVING USE OF CASH COLLATERAL (the "Cash Collateral Motion") and the Omnibus Declaration filed concurrently herewith and incorporated herein by reference.  Only facts directly relevant to this Motion are restated herein.

4.    ATI is a publicly traded company whose stock is traded on the Nasdaq Global Market under the symbol "AVZA."  As of February 3, 2009, ATI had 21,856,473 shares of its common stock outstanding, held by approximately 2,865 stockholders.  ATI is a holding company whose sole assets consist of shares of stock in Aviza and Trikon, its wholly owned subsidiaries.  There are a total of 22 corporate entities in the Aviza family.  A graphic of the Company's corporate structure is attached as **Exhibit "A"** to the Omnibus Declaration and by this reference incorporated herein.

5.    The Company designs, manufactures, sells and supports advanced semiconductor capital equipment and process technologies for the global semiconductor industry and related markets.  The Company's customer base is geographically diverse and includes both integrated device manufacturers and foundry-based manufacturers.  The Company has a broad installed base with approximately 2,500 systems installed worldwide.  The Company is headquartered in Scotts Valley, California and operates its manufacturing, sales and support through directly and indirectly wholly owned subsidiaries in the United States, the United Kingdom, France, Germany, Korea, Japan, Malaysia, Singapore, Taiwan, Peoples Republic of China and Israel.

6.    On April 13, 2007, ATI and Aviza entered into a LOAN AND SECURITY AGREEMENT and related documents (collectively, the "Loan Agreement") with United Commercial Bank, East West Bank and ChinaTrust Bank (USA) (collectively, the "Banks") for a credit facility (the "Pre-Petition Secured Credit Facility") pursuant to which the Banks provided credit to approximately $55,000,000 under a revolving line of credit, an equipment term loan and a real estate term loan.  As of the Petition Date, ATI and Aviza owed the Banks approximately $28,300,000.  This obligation (the "Pre-Petition Secured Obligations") is secured by the assets of ATI and Aviza, but not the assets

Case: 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 3 of 10

RPR
R:\Aviza\Pet\Mot 1stDay\Wages\Mot 1.doc

3    MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;....

of Trikon or any other directly or indirectly owned subsidiary. On May 20, 2009, the Banks sent a letter to the Company declaring certain provisions of the Loan Agreement to be in default, accelerating the balance due, demanding payment in full of the Pre-Petition Secured Obligations and advising of their intent to exercise their rights and remedies.

7. Due to the rapid decline in new orders and sales being experienced industry-wide, on November 20, 2008, the Company engaged the investment banking firm of Needham & Company, LLC ("Needham") to assist it in exploring opportunities to sell the Company and/or raise additional equity investment. Needham contacted over 30 companies and conducted over 10 management meetings and/or presentations. As the months progressed, it became clear that the only salvation for the company was a sale of its assets, including the stock or assets of some of its directly or indirectly owned subsidiaries. As a result of Needham's efforts, the Company has executed a non-binding letter of intent with Sumitomo Precision Products Co., Ltd. ("SPP"). While negotiations with SPP are ongoing, it appears that consummating the SPP transaction may result in payment in full of the Pre-Petition Secured Obligations and possibly leaving other sale proceeds to pay to the Company's unsecured creditors.

8. The Debtor has filed the Cash Collateral Motion authorizing the use of cash collateral to continue its operations under a budget prepared by the Debtor so as to maintain the going concern value of its business ("Budget"). The Debtor will also move for an order authorizing the continuance of certain pre-petition cash management practices among the Debtor and its directly and indirectly owned subsidiaries. In addition to certain First Day Motions, the Debtor will soon be filing a motion for an order establishing sale procedures, including overbid procedures. The Debtor anticipates that it will file its motion to approve an asset purchase agreement (the "Sale Motion") as soon as possible after the entry of the order approving the sale procedures, and will ask the Court to approve the highest and best bid at the hearing on the Sale Motion. The Debtor also intends to file a plan of reorganization to distribute the sale proceeds to the Banks and other creditors

**C.    Summary of Relief Sought**

9. By this Employee Benefits Motion, the Debtor seeks authority from the Court to pay the following outstanding prepetition employee obligations due and owing through the Petition

Case 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 4 of 10

RPR
R:\A\A22 Trikon\1st Day\Wages Mot 1.doc

4    MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;...

Date[1]:

| Employee Obligations | Amount |
|---|---|
| Prepetition Vacation ("Vacation")[2] | Honored in the ordinary course |
| Prepetition Business Expenses | $ 24,975.69 |
| Prepetition Contributions to Cafeteria Plan | $ 18,834.36 honored in the ordinary course |
| **Total** | $ 43,810.05 |

10. Debtor requests permission from the Court: (1) to pay such prepetition employee obligations, including business expenses, incurred and owing to any employee through the Petition Date; (2) to pay due and owing pre and post-petition health and welfare premiums; and (3) to honor prepetition accrued Vacation owing to any current employee through the Petition Date; collectively, ("Employee Obligations"). Debtor believes there are several employees who are owed more than $10,950 in Vacation which was earned within 180 days of the Petition Date. Any amount owed above the statutory priority limit of $10,950 will be treated as a general unsecured claim.

### D. Debtor's Employees

11. The Debtor's workforce currently includes approximately 70 full-time and part-time employees located in its Scotts Valley facility. In current market conditions, a majority of the Scotts Valley based employees typically work 24-32 hours per week.

12. Debtor's payroll department is located in the Scotts Valley facility, but its U.S. payroll is processed by ADP, Inc.

13. Debtor's workforce is critical to its business operations. Each of Debtor's employees is essential not only to the continued, uninterrupted operation of the Debtor's business, but to effectuating the orderly administration of the Debtor's bankruptcy case and a successful plan of reorganization.

14. Debtor maintains health and welfare plans for its employees. Currently, there are

---

[1] As defined below.
[2] The Debtor does not intend to "cash out" Vacation benefits to current employees at this time. The Debtor however does intend to honor accrued Vacation for all current employees by allowing current employees to use Vacation in the ordinary course. In the event of a post-petition termination, employees will be entitled to a pre-petition claim up to $10,950.00, earned within 180 days of the bankruptcy filing, with the balance being a general unsecured claim.

RPR
R:\Avia2\Pay\Mot 1stDay\Wages\Mot 1.2.doc

Case: 09-54511   Doc# 17   Filed: 06/12/09   Entered: 06/12/09 13:43:19   Page 5 of 10

5   MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;....

approximately 70 employees covered by the Debtor's health plans.

E. **Prepetition Compensation**

15. **Salaries and Wages.** On June 9, 2009, the Debtor funded payroll through its payroll processor, ADP, for its existing employees' salary for the pay period of June 8, 2009 through June 14, 2009 (the "June 14 Payroll"). Regularly, Debtor's workforce is typically paid bi-weekly for payroll periods, with the next payroll scheduled on June 19, 2009 (the "June 19 Payroll"). The June 14 Payroll and the June 19 Payroll were only for one week due to the Debtor commencing the Chapter 11 cases. The next regularly scheduled bi-weekly payroll is scheduled for July 3, 2009. Debtor distributes payroll through check or direct deposit upon the employee's election. Debtor believes that all wages for the June 14 Payroll have been funded, although there is a possibility that customer demands can require a limited number of employees to work over-time, resulting in increased payroll obligations. Payments to employees will be made by checks or direct deposits drawn on ADP's account. Thus, the Debtor believes that there will be no pre-petition salary or wages owing as of the Petition Date.

16. **401K Plans.** Debtor also pays for fees and expenses relating to its retirement benefit plan ("40lK"). Thus, Debtor requests approval to pay the portion of the fees and expenses that accrued prepetition but remain unpaid and owing.

17. Any owing fees and expenses relating to the post-petition period will be paid in the ordinary course.

18. **Vacation.** In the ordinary course, Debtor provides Vacation to its employees. Debtor requests authority to continue to honor Vacation earned by current employees and allow such employees to use prepetition accrued Vacation in the ordinary course of business. In the event of a post-petition termination, terminated employees will have a Pre-Petition priority claim up to the statutory limit of $10,950.00, with any remaining owing amount being treated as a general unsecured claim.

19. **Business Expenses.** In addition, Debtor customarily reimburses its employees for business expenses incurred in performing their duties such as travel, meals, mileage, and telephone use. Debtor believes there are employees who have not submitted outstanding prepetition expense

Case 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 6 of 10

6   MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;…

reimbursement claims, totaling approximately $24,975.69. Debtor acknowledges that there may be other employees that may not have submitted all claims timely. Debtor seeks authority to pay such Pre-Petition business expenses in the ordinary course and to honor outstanding checks related thereto, if any.

20. **Health and Welfare Benefits.** Furthermore, Debtor customarily pays its employees' medical, vision, and dental insurance premiums (subject to various employee contributions). According to Debtor's records, Debtor has paid the health care premiums through June 30, 2009. To the extent that additional expenses are due and owing, Debtor requests authority to pay any outstanding health and welfare insurance premiums for its employees, regardless of whether the premiums accrued during any period prior to the Petition Date.

21. **Cafeteria Plan**. Debtor also offers employees a cafeteria plan (the "Cafeteria Plan") pursuant to Section 125 of the Internal Revenue Code. This benefit allows employees to make pre-tax contributions, which are deducted from employees' salaries bimonthly, and held in trust by the Debtor. The employee is then reimbursed, for allowable expenses, up to the contribution amount. Currently, the Debtor holds $18,834.36 for employee contributions made pursuant to the Cafeteria Plan. These contributions will be paid in the ordinary course when reimbursement is requested.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

22. The Debtor is authorized to use property of the estate other than in the ordinary course of business pursuant to Bankruptcy Code § 363(b)(1). The bankruptcy court has discretion regarding 363(b) motions requesting use, sale or lease of property of the estate outside the ordinary course of business. *See In re North Brand Partners*, 200 B.R. 653, 656 (9th Cir. BAP 1996). The Debtor is required to show that a sound business purpose justifies the use, sale or lease of property of the estate under § 363(b)(1). *See, e.g., Stephens Indus., Inc., v. McClung*, 789 F.2d. 386, 389-90 (6th Cir. 1986); *Committee of Equity Sec. v. Lionel Corp. (In re Lionel Corp.*), 722 F.2d. 1063, 1071 (2d Cir. 1983); *In re Lady H Coal Co., Inc.,* 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-176 (D. Del. 1991).

23. The Debtor has the burden of demonstrating a valid use, sale or lease of property of the estate outside the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d. at 1070-71.

Case: 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 7 of 10

7    MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;....

After the debtor has articulated a rational business judgment, a presumption exists that the business decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the Debtor. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*citing Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). A party who objects to the use, sale or lease of the estate property must produce evidence supporting its objection. *See, e.g., In re Montgomery Ward Holding Corp.* 242 B.R. 147, 155 (Bankr.D.Del. 1999) (*citations omitted*).

24. It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating a Chapter 11 case is critical to a successful reorganization. As the court noted in *In re Chateauguay Corporation*, "[e]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operations and its ability to effectively reorganize during the Chapter 11 process." 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (*citations omitted*). The Debtor believes that its failure to satisfy outstanding Employee Obligations would create concern and discontent among its employees, and adversely affect the employees' esprit de corps. Moreover, it would undermine the Debtor's ability to retain its employees. If the Debtor cannot promptly assure its employees that accrued Vacation will be honored, immediate and irreparable harm may result due to the employees relocating or resigning prior to the consummation of a successful reorganization. The Debtor's ability to honor payroll, expense reimbursements, insurance, retirement benefits, workers' compensation benefits and accrued Vacation is important to maintaining continuity and order to the Debtor's business activity through retention of its employees. At this critical state of the case, the Debtor cannot risk a significant disruption in its operations caused by low employee morale.

25. Debtor believes that under the Budget, it will have sufficient operating cash to satisfy the foregoing Employee Obligations as they come due in the ordinary course of the Debtor's business. Moreover, the accrued Vacation for all employees will be honored up to the $10,950.00 per employee limit set by § 507(a)(4) in the ordinary course of business.[3] The cost of the insurance,

---

[3] Section 507(a)(4) provides that an employee is entitled to priority to the extent of $10,950 earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's

Case: 09-54511  Doc# 17  Filed: 06/12/09  Entered: 06/12/09 13:43:19  Page 8 of 10

RPR
R:\Aida\Rupprot 1stDay\Wages\Mot 1 2.doc

8  MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;…

workers' compensation premiums, and other employee contributions is not expected to exceed the amount limitation per employee pursuant to § 507(a)(5).[4] In addition, Debtor submits that the relevant time periods for which payment is requested fall within the 180 days prior to the filing of the petition as required by §§ 507(a)(4) and (a)(5). As these employees are necessary to maintain the value of the Debtor as a going concern, the Debtor believes that such a request is modest in light of the perceived benefit to the estate. Permitting the Debtor to satisfy its Employee Obligations is grounded on sound business judgment consistent with §§ 363, 1107 and 1108 of the Code.

26. To further maintain the continuity and preserve the morale of the Debtor's employees, and to maintain the viability of the Debtor's business pending consummation of a successful reorganization, the Debtor respectfully requests that this Court grant the relief requested herein.

27. No previous request for relief sought in this Employee Benefits Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an Order:

1. Granting the Debtor's Employee Benefits Motion;

2. Authorizing the Debtor, in its sole discretion, to pay outstanding business expenses, honor Vacation and honor any other outstanding employee obligations, up to a maximum of $10,950.00 per employee;

3. Authorizing the Debtor, in its sole discretion, to maintain payment of employees' health and welfare insurance including any accrued prepetition premiums, claims, and fees;

4. Authorizing and requiring applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment by each employee and to honor all fund transfer requests made by the Debtor relating to the foregoing Employee Obligations; and

---

business, whichever occurs first, for wages, salaries, or commission, including vacation, severance, and sick leave pay earned by an individual.

[4] Section 507(a)(5) provides priority to claims for contributions to an employee benefit plan arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, but only for each such plan, to the extent of (i) the number of employees covered by each such plan multiplied by $10,950 less (ii) the aggregate amount paid to such employees under paragraph 4 of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

Case: 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 9 of 10

9  MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PREPETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;...

5. For such other relief as this Court deems just and proper.

Dated: June 12, 2009          **MURRAY & MURRAY**
A Professional Corporation

By: */s/ Robert A. Franklin*
Robert A. Franklin
Attorneys for Debtors

Case: 09-54511    Doc# 17    Filed: 06/12/09    Entered: 06/12/09 13:43:19    Page 10 of 10

MOTION FOR ORDER AUTHORIZING THE DEBTOR TO (I) HONOR PRE-PETITION EMPLOYEE WAGE OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS;....