JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
DORIS A. KAELIN (162069)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: dkaelin@murraylaw.com

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re: | Jointly Administered Chapter 11 Cases |
|---|---|
| **AVIZA TECHNOLOGY, INC.,**<br>A Delaware corporation<br>Employer's Tax ID No.: 20-1979646 | Case No. 09-54511-RLE-11 |
| **AVIZA, INC.,**<br>A Delaware corporation<br>Employer's Tax ID No.: 20-0249205 | Case No. 09-54514-RLE-11 |
| **TRIKON TECHNOLOGIES, INC.,**<br>A Delaware corporation<br>Employer's Tax ID No.: 95-4054321 | Case No. 09-54515-RLE-11 |
| Debtor(s).<br>440 Kings Village Road<br>Scotts Valley, CA 95066 | |

EXHIBIT "A"

TO

MOTION FOR ORDER APPROVING OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS

## [Proposed] BID PROCEDURES

Aviza Technology, Inc., Aviza, Inc. and Trikon Technologies, Inc. (collectively, the "Debtors") have entered into an Asset Purchase Agreement (the "Purchase Agreement") with Sumitomo Precision Products Co., Ltd. ("SPP" or the "Stalking Horse Purchaser") with respect to the sale of certain of the Debtors' assets, along with certain assets and stock of subsidiaries of the Debtors (the "Purchased Assets"), conditioned on Bankruptcy Court approval after an opportunity for Qualified Bidders (as defined below) to submit competing bids.

Subject to approval of the Bankruptcy Court, the procedures hereinafter set forth (the "Bid Procedures") shall govern the bidding and sale process. As provided below and in the Purchase Agreement, the Bid Procedures will be incorporated into a binding order (the "Bid Procedures Order") entered by the Bankruptcy Court.

### Bidding Process

The Debtors, in consultation with the representatives of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and United Commercial Bank, as agent for various secured parties (the "Lender"), will:

(a) determine the steps to be completed, and the timing in respect of such steps, for the marketing and sale of the Debtors' Purchased Assets[1];

(b) determine whether any person is a Qualified Bidder (as defined below);

(c) determine whether a Qualified Bidder has made a Qualified Bid (as defined below); and

(d) negotiate any offer set forth in a Qualified Bid,

(collectively, the "Bidding Process").

### Participation Requirements

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the Bidding Process, each person (a "Potential Bidder") must first deliver to: Needham & Company, LLC ("Needham"), 3000 Sand Hill Road, Building 2, Suite 190, Menlo Park, California 94025, Attn: James P. King, **no later than 5:00 p.m. (Pacific Daylight Time) on September 9, 2009**, the following items (the "Participation Requirements"):

(a) Confidentiality Agreement: An executed confidentiality agreement (unless previously delivered) in form and substance reasonably acceptable to the Debtors; that includes, *inter alia*, provisions setting forth the authorized use of confidential

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the MOTION FOR ORDER APPROVING OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS (the "Bid Procedures Motion")

1

K:\Aviza\Pld\Sale\MotSaleProc(SPP)\BidProcedures(NOH-exhibit).doc

**EXHIBIT A**

information and, where appropriate, the creation of appropriate information walls, which confidentiality agreement shall be no less protective of the Debtors' confidential information than the confidentiality agreement executed by SPP.

(b) <u>Proof of Financial Ability to Perform</u>: The most current audited and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of making a Bid, the current audited and latest unaudited financial statements of the equity holder(s) of the Potential Bidder or such other form of financial disclosure evidencing the Potential Bidder's ability to close the proposed sale transaction, the sufficiency of which shall be determined by the Debtors in their discretion in consultation with the Creditors' Committee and the Lender.

Within one business day of receipt of the Participation Requirements, Needham shall notify the following persons (via email or telephone) of the receipt of such materials, specifying the name of the Potential Bidder and promptly furnish copies of the materials to: (i) Aviza Technology, Inc., Attn: Patrick O' Connor; (ii) Murray & Murray, Attn: John Walshe Murray; (iii) Orrick Herrington & Sutcliffe LLP, Attn: Frederick D. Holden; and (iv) Binder & Malter LLP, Attn: Robert Harris.

### Access To Due Diligence Materials

Upon a Potential Bidder's satisfaction of the Participation Requirements such Potential Bidder shall be deemed to be a "<u>Qualified Bidder</u>." The Debtors shall afford each Qualified Bidder due diligence access to the Debtors' assets and businesses, subject to competitive and other business concerns, which diligence may include access to the Debtors' electronic data room, management presentations and site visits, and such other diligence which Potential Bidders may request and to which the Debtors, in their discretion, may agree, <u>provided, however</u>, that the Debtors shall have no obligation to provide due diligence access to any Qualified Bidder after the Bid Deadline (as defined below), except as the Bankruptcy Court may otherwise order. The Debtors will coordinate efforts and provide all reasonable requests for additional information and due diligence access for Qualified Bidders.

In the sole discretion of the Debtors, the financial information provided to Qualified Bidders may include, among other information, the following:

(a) accounts receivable aging reports (without customer names), quarterly since March, 2009, broken down by revenue type (systems sales, retention, spares and service);

(b) consolidating balance sheet and income statement, by entity quarterly since March, 2009;

(c) inventory report covering the Purchased Assets, categorized by systems and spares at standard costs;

2

(d) sales backlog report of signed purchase orders (without customer names), broken down by revenue type (systems sales, retention, spares and service);

(e) list of fixed assets, with date purchased, original cost, depreciation schedule, and book value; and

(f) intellectual property listing, with registration numbers, descriptions and expiration dates, broken down by entity.

Debtors make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Purchase Agreement with any Successful Bidder.

### Bid Deadline

The deadline for submitting bids by a Qualified Bidder shall be **September 18, 2009 at 2:00 p.m. (Pacific Daylight Time)** (the "Bid Deadline"). A bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below); provided, however, the Creditors' Committee and Lender reserve the right to move the Court to allow a late bidder to be deemed a Qualified Bidder and to participate in the Auction.

No later than the Bid Deadline, a Qualified Bidder that desires to make a bid to acquire the Purchased Assets (a "Bid"), shall deliver written copies of its Bid to the Notice Parties (defined below). The Debtors shall transmit copies of all Bids to counsel for the Creditors' Committee, the Lender and the Stalking Horse Purchaser via facsimile, hand-delivery, overnight mail, or electronic mail, immediately after receipt.

### Determination Of Qualified Bid Status

Each Bid must comply with each of the following conditions:

(a) Marked Purchase Agreement: A Bid shall be in the form of a black-lined copy of the Purchase Agreement (including any schedules or disclosures that are part thereof) showing the changes requested by the Bidder, including those related to the Purchase Price and other material terms such that the Debtors, in consultation with the Creditors Committee and the Lender, may determine how such Bid compares to the terms of the Purchase Agreement.

(b) Assets: The Debtors are considering Bids for the Purchased Assets. Prospective Qualified Bidders may submit a "joint bid" for the Purchased Assets, provided, however, that the identity of each Person participating in such "joint bid" must be disclosed in the Bid, and such "joint bid" shall be subject to section 363(n) of the Bankruptcy Code.

(c) Conditions/Contingencies: Except as provided in the Purchase Agreement, a Bid shall NOT be subject to material conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence.

3

(d) Authorization: A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors or governing body with respect to the submission, execution, delivery and closing.

(e) Good Faith Deposit: Except for the Stalking Horse Purchaser and the Lender, each Bid shall be accompanied by a good faith cash deposit in the amount of $1,000,000 in the form of a certified check or other form acceptable to the Debtor in their discretion. Each good faith deposit will be deposited and held in the escrow account of Murray & Murray, A Professional Corporation, counsel to the Debtors.

(f) Minimum Bid Requirement For Purchased Assets: A Qualified Bidder's Bid to acquire the Purchased Assets shall have an initial minimum bid requirement equal to the sum of: (i) the Purchase Price (as defined in the Purchase Agreement) [see appendix hereto prepared by Needham for summary of the components of the Purchase Price$^2$]; (ii) $1,000,000 representing the maximum Expense Reimbursement amount; and (iii) the Overbid Increment in the amount of $500,000.00 (the aggregate of such amounts is referred to herein as the "Minimum Initial Bid").

(g) Other Evidence: Each Bid must contain evidence satisfactory to the Debtors, in consultation with the Creditors Committee and the Lender, that the bidder is reasonably likely (based upon availability of financing, experience and other considerations) to be able to timely consummate a sale transaction if selected as the Successful Bidder (as defined below).

(h) Agreement to Bid Procedures. Each bidder must confirm in writing its agreement to accept and abide by the terms, conditions and procedures of the Bid Procedures Order.

(i) Bid Irrevocable/Back-up Bid: A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Qualified Bidder that participates in the Auction (as defined below) further agrees that its final and best bid at the conclusion of the Auction, if not deemed the Successful Bid, shall serve, without modification, as a back-up bid or alternate back-up bid as may be designated by the Debtors at the Sale Hearing, in the event the Successful Bidder fails to close as provided by these Bid Procedures, the Bid Procedures Order and the Sale Order.

A Bid received from a Qualified Bidder on or before the Bid Deadline that meets the above requirements, in the Debtors' discretion, in consultation with the Lender and the Creditors Committee, shall constitute a qualified bid (a "Qualified Bid"). In the event a Bid is determined

---

[2] The Appendix is a summary only. Interested persons are referred to the Purchase Agreement for a more complete and precise statement of the terms comprising the Purchase Price under the Purchase Agreement.

not to be a Qualified Bid, such Bidder shall be refunded its Good Faith Deposit within three (3) business days of that determination.

The Stalking Horse Purchaser is a Qualified Bidder and the Purchase Agreement is a Qualified Bid. Notwithstanding anything to the contrary in the Motion or the Bid Procedures Order, the Lender shall also be deemed a Qualified Bidder.

### Bid Protections

The Debtors have agreed to pay the Stalking Horse Purchaser the Expense Reimbursement in accordance with the terms and conditions set forth in the Purchase Agreement. No other bidder shall be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment.

### "As Is Where Is"

The sale of the Debtors' assets that are the subject of the Motion shall be on an "as is, where is" basis without representations or warranties of any kind or nature, except to the extent set forth in the respective definitive purchase agreement(s) with the Successful Bidder. Except as may be set forth in the definitive purchase agreement(s), any and all of the Debtors' assets shall be sold free and clear of any and all liens, claims, encumbrances, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, encumbrances, restrictions, charges, and encumbrances to attach to the net proceeds of sale in their order of priority.

### Auction and Sale Hearing

If a Qualified Bid is received, an Auction ("Auction") will be held at the Sale Hearing in the Bankruptcy Court to determine the highest and best bid for the Debtors' Purchased Assets.

In the event the Debtors do not receive by the Bid Deadline at least one Qualified Bid for the Purchased Assets, other than the Purchase Agreement, the Debtors will seek approval of the sale of the Purchased Assets to the Stalking Horse Purchaser at the Sale Hearing.

The Debtors and their advisors will direct the Auction, in consultation with the Creditors Committee and the Lender, subject to the requirements of the Bankruptcy Court which will preside over the Auction.

At the opening of the Auction, the Debtors will announce the then highest and best bid for the Purchased Assets (the "Baseline Bid"), and the manner in which bidding on the Purchased Assets will proceed at the Auction.

At the Auction, all Qualified Bidders may submit further bids, along with a markup or a further markup of the Purchase Agreement. The Auction will be conducted in rounds. All bidders must participate in each round of bidding or they will forfeit their right to further participate in the Auction. At any time, a bidder may request that the Debtors announce, subject to any potential new bids, the then current highest and best bid. If requested, the Debtors shall

use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Debtors' announcement of the then current highest and best bid. If requested by the Debtors, all Qualified Bidders shall bid in the order determined by the Bankruptcy Court.

The Debtors may announce at the Auction such additional rules for bidding at the Sale Hearing that, in their judgment, will better promote the goals of the bidding process and that are not inconsistent with the Bid Procedures.

### Bidding Increments

Each Bid made at the Auction for the Purchased Assets in a single transaction following announcement of the Baseline Bid or Bids will be in cash increments of $500,000.00; provided the Debtors, in consultation with the Creditors' Committee and the Lender, shall retain the right to modify the increment requirement at the Auction ("Overbid Increment").

An Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder for (a) each round of bidding and, (2) for those Qualified Bidders not selected as the Successful Bid, for purposes of serving as a Back-up Bid or Alternate Back-up Bid as defined below.

### Conclusion Of The Auction And Sale Hearing

At the conclusion of the bidding, the Debtors, following consultation with the Creditors' Committee and the Lender, shall (1) review the Qualified Bid(s) on the basis of among other things, the following: (a) the amount of the Qualified Bid(s), (b) the form of the proposed transaction (i.e., any improvement in the terms set forth in the Purchase Agreement), (c) the number, type and nature of any changes to the Purchase Agreement, (d) the extent to which such modifications are likely to delay closing of the sale of the Purchased Assets and the cost to the Debtors of such modifications or delay; (e) the likelihood of the bidder's ability to close a transaction and the timing thereof, and (f) the net value to the Debtors, taking into account the Stalking Horse Purchaser's right to the Expense Reimbursement, and such other aspects as determined by the Debtors in consultation with the Creditors' Committee and the Lender; and (2) submit the highest and best bid (the "Successful Bid") for approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code.

Prior to the Bankruptcy Court approving a Successful Bid, the bidder recommended by the Debtors as the Successful Bidder shall supplement the Court's record with evidence establishing such bidder's provision of adequate assurance of future performance of executory contracts and unexpired leases to be assumed and assigned to such bidder.

In the event either the Successful Bid is approved, but not consummated by the Closing as provided at Section 9.1 of the Purchase Agreement[3] (or such later date as the Debtors and the

---

[3] Section 9.1 of the Purchase Agreement provides that the Closing "[s]hall be held on or within three (3) Business Days after the Sale Order becomes a Final Order and all other conditions set forth in Article 7 have been
*Footnote continued - -*

Successful Bidder shall mutually agree in writing), the Debtors will request that the next highest and best bid, and the next highest and best bid to that bid (and so on), be approved without the necessity of further order of the Bankruptcy Court, and that such bidder be required to consummate the transaction contemplated in its bid within seven (7) days of being declared the Successful Bidder.

The Bid Procedures shall be without prejudice to the rights of Lender to make a credit bid pursuant to section 363(k) of the Bankruptcy Code at the Auction based on the balance owing to Lender as of the Auction, and Lender may so credit bid. In the event the Lender credit bids and such bid is the Successful Bid, such Successful Bid shall have a cash component equal to the Expense Reimbursement and shall include a written acknowledgement by Lender that the cash component of the Successful Bid may be used by the Debtors free and clear of any lien, claim or encumbrance of the Lender, to satisfy the Expense Reimbursement to the Stalking Horse Purchaser.

Any bidder that intends to request that the Bankruptcy Court make a finding under Bankruptcy Code Section 363(m) that such bidder's purchase of the Purchased Assets or the assignment to it of an executory contract or unexpired lease is in good faith, shall, in advance of the Sale Hearing, file with the court and serve on the Notice Parties (defined below), a written declaration of a competent witness demonstrating (A) the bidder's good faith, and (B) the absence of fraud or collusion between the bidder and any other bidder, or between the bidder and the Debtors' or the estate's agents or employees. The declaration must also disclose any facts material to the good faith determination, including:

(a) The bidder's pre- and post-petition relationships with (i) any other bidder, (ii) the Debtors or the Debtors' current or former officers, directors, agents or employees, and (iii) any of the Debtors' major creditors or equity security holders;

(b) The bidder's anticipated relationship after the sale with any of the Debtors' current or former officers, directors, agents or employees;

(c) Whether any offers of employment or compensation have been or will be made to any of the Debtors' current or former officers, directors, agents or employees; and

(d) Whether the bidder has paid or contemplates paying consideration in connection with the sale to any person other than the Debtors.

The Debtors reserve the right, in consultation with the Lender and the Creditors' Committee, to select the next highest and best offer after the Successful Bid as a back-up bid ("Back-up Bid" and such Bidder is herein referred to as the "Back-up Bidder"), or alternate back-up bid ("Alternate Back-up Bid" and such Bidder is herein referred to as the "Alternate Back-up Bidder"), as applicable, for the Purchased Assets.

---

duly satisfied or waived (or such other date as the Parties may agree in writing)...The date on which the Closing occurs is referred to as the "Closing Date."

## Treatment of Deposits

The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at the Closing Date.

The Good Faith Deposit of the Back-up Bidder and Alternate Back-up Bidder shall be held in an interest-bearing account until the earlier of five (5) days after the closing of the transactions contemplated by the Successful Bid, or, if applicable, the Back-up Bid or Alternate Back-up Bid, and thereafter returned (with the interest earned thereon) to the Back-up Bidder and/or Alternate Back-up Bidder. Good Faith Deposits of any Bidder not selected as a Back-up Bid or Alternate Back-up Bid by the Debtors shall be held in an interest-bearing escrow account until no later than two (2) business days after the Sale Hearing, and thereafter returned (with the interest earned thereon) to the respective bidders. If a Successful Bidder, Back-up Bidder, or Alternate Back-up Bidder, as applicable, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, the Debtors (a) shall retain the Good Faith Deposit of such Bidder as liquidated damages resulting from the breach or failure to perform by such Bidder; and (b) be authorized but not required to consummate the Back-up Bid, or Alternate Back-up Bid, as applicable, without further notice or order of the Bankruptcy Court.

## Miscellaneous Provisions

The Debtors, in their discretion, may, in consultation with the Creditors' Committee and the Lender, (a) determine which Qualified Bid, if any, is the highest and best offer for the Purchased Assets, and (b) reject at any time before entry of the Sale Order any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the debtors, the estates, and creditors.

## Notice Parties

The Notice Parties hereunder are as follows: (i) Aviza Technology, Inc., 440 Kings Village Road, Scotts Valley, California 95066, Attn: Patrick O'Connor; (ii) counsel to the Debtors, Murray & Murray, A Professional Corporation, 19400 Stevens Creek Blvd., Suite 200, Cupertino, California 95014, Attn: John Walshe Murray, Esq.; and (iii) Needham & Company, LLC, 3000 Sand Hill Road, Building 2, Suite 190, Menlo Park, California 94025, Attn: James P. King.

APPENDIX
# Summary of Transaction Terms
*(This document is a summary only. For a more complete and precise statement of the terms, please consult the Asset Purchase Agreement)*

**To Be Acquired:**
    A subsidiary of ATL
    Shares of Aviza China
    Assets, contracts, and intact workforce of Aviza US, Aviza Singapore, Aviza Malaysia, Aviza Taiwan, Aviza Korea, Aviza Japan, Aviza France and one employment agreement in Israel
    Inventory
- PEC system inventory
- TP system inventory (furnace and APCVD)
- Spare parts inventory (PEC, Furnace, APCVD, and ALD)
- Upgrade inventory (all products)

    All accounts receivable
    All related IP

**Consideration:**
Cash at Closing
    $15 million cash
- Less the amount of the assumed warranty obligations value (other than ATL)
- Less the amount of the customer deposits and prepayments (other than ATL)
- Less the amount of ATL payables in excess of $5 million
- Less the amount by which the base cash to be paid at closing is reduced pursuant to property tax proration provisions
- Plus vendor deposits and prepayments (other than ATL)

Assumption of Liabilities
    $5 million in liabilities of ATL
    UK lease
    Warranty obligations
    Customer deposits and prepayments

Recourse Note
    $10 million
- Term: 18 months
- Secured by inventory, accounts receivable and intellectual property
- SPP will pay down the recourse note on a monthly basis by any amount of accounts receivable collected or inventory used in cumulative value of over $10 million but less than $20 million
- Bearing the WSJ prime rate. Interest is accrued on a 365-day year for the actual number of days elapsed without compounding

Non-Recourse Note
    Value of accounts receivable and inventory at closing minus $20 million
- Term: 18 months
- Secured by inventory and accounts receivable
- SPP will pay down the recourse note on a monthly basis by any amount of accounts receivable collected or inventory used in cumulative value of over $20 million
- After 18 months, SPP can return the unused inventory and uncollected accounts receivable to Aviza for full satisfaction of the non-recourse note

**Calculation of Inventory and Accounts Receivable**
Inventory
    Valued at standard cost in accordance with GAAP. SPP will sell on a FIFO basis the inventory purchased, before purchasing from other sources or manufacturing alternate inventory

Accounts receivable
    Valued at the contract value or purchase order value of the contracts or purchase orders, net of commissions payable equal to 20% on non-retention accounts receivable, 50% on retention accounts receivable and 15% on spares and service accounts receivable

## Payment Sequence for Inventory & A/R:
*($ in millions)*



|  |  |
|---|---|
| $51.5 | Finally, pay monthly against non-recourse note — FIFO Commitment |
| $20 | Third, pay monthly against recourse note — Total of $20M committed |
| $10 | Second, credit against liability assumption |
| $5 | First, credit against cash payment |
| $0 | |

A/R collected & inventory consumed

## Selected Items in Consideration:
*($ in millions)*



|  | As of 6/27/2009 | |
|---|---|---|
|  | GAAP | At Standard Cost |
| Inventory | $ 17.0 | $ 41.6 |

*Difference between GAAP inventory and inventory at standard cost is excess inventory on active products and current installed base

|  | As of 6/27/2009 |
|---|---|
| Warranty Obligations (other than ATL) | $ 0.4 |
| Customer Deposits and Prepayments (other than ATL) | $ 0.2 |
| Net ATL Payables | $ 5.7 |



Total of 6.1 million GBP, paid in increasing monthly increments ending in 2020